UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

MARTIN B. NOVICK, JR.                                   17 Civ. 7937

                    Plaintiff,                          **COMPLAINT**

  -against –

                                         **JURY TRIAL DEMANDED**

VILLAGE OF WAPPINGERS FALLS, NEW YORK


                    Defendant.
------------------------------------------------------------X

       Plaintiff, MARTIN B. NOVICK, JR., by his attorneys, Gould & Berg, LLP, respectfully alleges the following for his Complaint:

       1. Plaintiff brings this action seeking relief pursuant to 42 U.S.C. Section 1983, for Defendant's violations of his associational rights to engage in Union-related activities and advocacy, in violation of the First Amendment to the Constitution of the United States, pursuant to the Americans With Disabilities Amendments Act of 2008, 42 U.S.C. 12101 et seq. (ADAAA) and pursuant to Section 296 et seq. of the New York State Executive Law (the New York Human Rights Law or NYHRL) for discrimination against him in the terms and conditions of employment on the basis of disability.

       2. The conduct giving rise to this Complaint involves the Village's actions in bringing disciplinary charges against Plaintiff, demoting him and failing to grant him a reasonable accommodation for his disability, thereby preventing him from working, all in violation of law.

       3. Plaintiff seeks compensatory damages to the extent allowable by law, attorneys' fees and other appropriate available legal and equitable relief.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331, as this matter involves federal questions. As to Plaintiff's supplemental state law claim, the Court's jurisdiction is invoked pursuant to 28 U.S.C. §1367.

5. Venue properly lies in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391, because the unlawful discriminatory conduct occurred in the Village of Wappingers Falls, Dutchess County, New York, and the Plaintiff is a resident of Dutchess County, New York.

6. On or about September 6, 2016, Plaintiff duly filed against the Village of Wappingers Falls, New York and the Village of Wappingers Falls Police Department a complaint of discrimination on the basis of disability, in violation of Article 15 of the New York State Human Rights (Case No. 10183507). A dual filing of the charge of discrimination, claiming a violation of the Americans With Disabilities Act was made with the United States Equal Employment Opportunity Commission. Federal Charge No. 16GB604114

7. On or about March 9, 2017, the New York State Division of Human Rights found that PROBABLE CAUSE exists to believe that the Respondents have engaged in or are engaging in the unlawfully discriminatory practice complained of.

8. Plaintiff thereafter requested that the charge in the Division of Human Rights be dismissed for administrative convenience and by letter dated July 28, 2017, the United States Equal Employment Commission issued a Notice of Right to Sue on his claims of discrimination on the basis of disability.

## THE PARTIES

9. Plaintiff Martin B. Novick has been employed as a law enforcement officer for the Defendant Village of Wappingers Falls since August, 1989 and has permanent competitive civil service status in that position.

10. In October 2001, Plaintiff was promoted to the title of Detective, carrying with it an increase in pay over the pay he received as a police officer.

11. As a permanently appointed competitive class employee who has held the rank of detective, Plaintiff has rights to continued employment in the title of detective pursuant to the New York State Civil Service Law, Section 75 and the Village Law Section 8-804.

12. The Defendant Village of Wappingers Falls, New York (the "Defendant" or the "Village") is a municipal corporation duly incorporated and existing under and by virtue of the laws of the State of New York with offices located at Village Hall, 2582 South Avenue, Wappingers Falls, and Dutchess County, New York.

## THE FACTS GIVING RISE TO THIS ACTION

13. Since approximately 1994, Plaintiff has served as President of the Police Benevolent Association of Wappingers Falls, (PBA) the exclusive bargaining agent for a unit consisting of all full-time and part-time police officers in the Village, with the exception of the Chief of Police and the Village Police Commissioner Carl Calabrese, who works part-time.

14. The PBA and the Village are parties to a Collective Bargaining Agreement (CBA) for the period January 1, 2006 through December 1, 2103, as modified by a Memorandum of Agreement (MOA) covering the period January 1, 2013 through December 31, 2018.

15. In his role as Union President, as set forth below, Plaintiff has actively advocated with the Village on behalf of the PBA and its members.

3

16. In response, as set forth below, Village officials, including Village Police Commissioner Calabrese, have frequently exhibited, in word and in deed, antipathy to that advocacy.

17. For example, on or about April 28, 2014, Plaintiff, along with PBA Vice President Scott McHugh, who was also a Detective, advocated on behalf of the PBA to the Village Police Committee, that Commissioner Calabrese was causing scheduling problems within the Village Police Department.

18. There was at that time a long-standing practice within the department that Detectives prepared their work schedules.

19. However, in retaliation for the foregoing advocacy, on April 29, 2014, the very next day, Calabrese issued an order prohibiting Plaintiff, Union Vice President Detective McHugh and two other detectives from preparing their work schedules.

20. In May 2014, Police Commissioner Calabrese expressed his animus toward the PBA by telling one or more PBA members that he would bankrupt the PBA.

21. At some point in the fall of 2014, Plaintiff, Union Vice President Detective McHugh and another part-time police officer met with Police Commissioner Calabrese to advocate for the PBA by setting forth demands for CBA negotiations.

22. Shortly after the foregoing meeting, Police Commissioner Calabrese stated to the others who attended that meeting that he was going to "get Novick."

23. In June 2015, Plaintiff was diagnosed with bladder cancer.

24. Plaintiff advised Police Commissioner Calabrese, as well as Police Sergeant Burke and Police Lieutenant Birdsell of that diagnosis in July 2015.

25. In or about July 2015, Plaintiff advised Police Commissioner Calabrese that he was going to go through a series of treatments for his bladder cancer and that at that time he would be going for six weeks of treatments.

26. In the summer of 2015 Plaintiff explained to Police Commissioner Calabrese, Police Sergeant Burke, and Police Lieutenant Birdsell how the treatment, known as "BCG" worked, how it was to be administered, (by being directly injected into the bladder), and that he did not know how he was going to feel after the treatment.

27. In or about July 2015, Plaintiff took time off from work for his cancer treatment.

28. During the course of his first round of treatment, Plaintiff explained to Commissioner Calabrese the effects of the treatment, including inter alia, that he was very uncomfortable, that he experienced urgency to go to the bathroom, for which there was no real warning.

29. In addition, in or about July 2015, Plaintiff advised Village Mayor Matt Alexander that he had bladder cancer and that the medical plan was to have six weeks of treatment and three years of periodic treatments or "preventive maintenance."

30. Plaintiff learned in or about October 2015 that the foregoing first round of treatment did "not work," advised Police Commissioner Calabrese and Sergeant Burke that the treatments did not work and that he would be going to Sloan Kettering in New York City for a second opinion.

31. Plaintiff was required to undergo a second round of treatment commencing in November 2015 and he informed Commissioner Calabrese, Lieutenant Birdsell, and Sergeant Burke of the second round of treatment.

32. During the second course of treatment, Plaintiff was out of work for a number of days as a result of the treatment and presented a note to his superiors on or about December 16, 2015 to the effect that he was required to be out of work.

33. In January 2016, Plaintiff returned to work but continued to suffer the side effects of treatment, including urgency and frequency of urination and fatigue.

34. During the period described above, Plaintiff was assigned to the Detective Bureau, and notwithstanding the side effects of treatment as described above, Plaintiff was able to manage his caseload as a Detective without restrictions.

35. During the period of time described above, Plaintiff's supervisors were aware of the side effects Plaintiff suffered as a result of the cancer treatment.

36. In February 2016, in his role as PBA President, Plaintiff engaged in CBA negotiations with the Police Commissioner who demanded that the new CBA contain language whereby new hires would be required to commit to remaining employed with the Village for five years before seeking new employment.

37. In his role as PBA President, Plaintiff advocated against the insertion of such language because he believed that it was in the interest of the PBA members to be able to better themselves by seeking other employment.

38. In March 2016, Police Commissioner Calabrese intentionally falsely told one of the Village's full-time police officers that a) the PBA did not want the Village to employ full-time police officers, b) that the PBA does not represent his (that officer's) interests, c) that he should not trust the PBA or its leadership, and d) that he should look out for himself because the PBA would not do so.

39. During the period between March 30 and April 13, 2016, Plaintiff underwent three weeks of additional cancer treatment.

40. As a result of those treatments, Plaintiff again suffered side effects of urgency of urination, irritability and fatigue.

41. Plaintiff's supervisors, including Commissioner Calabrese, Lieutenant Birdsell and Sergeant Burke were aware that Plaintiff was suffering those side effects of treatment.

42. During the periods described above Plaintiff was assigned to the Detective Bureau and had easy access to bathroom facilities.

43. On April 27, 2016, all three Detectives in the Detective Bureau, including Plaintiff, (and Union Vice President Scott McHugh) were notified that as of June 1, 2016, they would be reassigned from the Detective Bureau to patrol and that all Detective functions and work they had exclusively performed and which had been exclusively performed by part-time police officers in the PBA's unit would be transferred and performed by the Dutchess County Sheriff's Office and/or New York State Police, except that the Village detectives would assist the State Police in homicide investigations.

44. On June 1, 2016, all three Detectives in the Detective Bureau, including Plaintiff, were reassigned to uniform patrol.

45. While assigned to the Detective Bureau, Plaintiff had not been required to wear a uniform.

46. Upon inquiry as to the reasons for this reassignment, Plaintiff was advised that the reasons were budgetary.

47. The Village budget was not in fact reduced by reason of the reassignment.

48. While assigned to the Detective Bureau, detectives planned their own schedules, put in their schedules weekly, and were able to change their schedules and manage their schedules around their caseloads.

49. On patrol, Plaintiff and the other Detectives reassigned to patrol were required to put in their schedules monthly and were required to work an eight hour tour, which had not been the case in the Detective Bureau.

50. On July 8, 2016, while Plaintiff continued to serve as President of the PBA, the PBA filed an Improper Practice Charge against the Village of Wappingers Falls with New York State PERB, alleging numerous violations of law.

51. Plaintiff was scheduled to work on Monday, July 25, 2017 and Thursday, July 28, 2017.

52. On July 24, 2016, Plaintiff called Police Headquarters and on a recorded call stated "I'm not coming in this week because [of] my treatment. I told the Lieutenant that I was going to try to at least do my Monday shift, but I got to go for my treatment again this week." He further stated "And with my treatment I got to just stay close to the house." "I tried but I just can't make it." "I don't want to be put in a bad position."

53. The dispatcher on duty responded "All right, Marty, you got it."

54. On July 24, 2016, per departmental procedure and practice, Plaintiff also called the on-call Lieutenant, John Birdsell at 6:02 p.m., but Lieutenant Birdsell did not answer the call or call back.

55. At 6:03 p.m. on July 24, 2016, Plaintiff again called Lieutenant Birdsell who did not answer the phone or call back. However, Plaintiff left a recorded message stated "I just wanted to call you up and let you know I won't be able to make it tomorrow (July 25, 2016) either. I'm

still hurting over this. I'm going to keep trying to call you. I did let the desk know that I wouldn't able to be in. But I'll keep trying to call you. Bye."

56. At 7:25 p.m. on July 24, 2016, Plaintiff again called Lieutenant Birdsell who again did not answer the phone and did not return the call.

57. After following departmental procedure by calling the on-call supervisor three times without reaching him, Plaintiff, in an abundance of caution called his immediate supervisor, Police Sergeant Walter Burke and informed Burke he would not be reporting for work for the upcoming week, i.e., the midnight shifts of Monday, July 25 and Thursday July 28., to which Burke responded in sum and substance that he would take of it.

58. At that time, Sergeant Burke was aware that Plaintiff received treatment on Wednesdays and that when he received treatments on Wednesdays he was unable to work Thursday.

59. As he previously advised the Department, Plaintiff did not report to work on July 25 or July 28, 2017.

60. Police Commissioner Calabrese subsequently directed Plaintiff to provide a written explanation of his absence on July 28, 2017, claiming that his absence was "unauthorized."

61. Plaintiff complied with the Commissioner's directive and provided such a written explanation on July 30, 2017.

62. In that explanation, inter alia, Plaintiff stated that he was required to periodically undergo treatment for bladder cancer, explained that he began treatment two weeks prior and that it had caused him discomfort. He advised that he had explained the treatment to Lt. Birdsell who stated it was not a problem. He advised the Commissioner that he would be unable to work during the week following treatment and would provide a note when he returned.

9

63. Commissioner Calabrese claimed on August 1, 2016 that he was unaware that Plaintiff was having maintenance treatment for cancer.

64. On August 10, 2016, Plaintiff and his counsel met with the Commissioner and others in conjunction with the Commissioner's purported investigation of Plaintiff's July 28, 2016 allegedly unauthorized absence and ostensibly to mediate a resolution of his absence before filing "potential charges."

65. Plaintiff provided to Commissioner Calabrese a doctor's note dated August 10, 2016 stating that Plaintiff required an accommodation at work in that he required frequent bathroom breaks.

66. By letter dated September 6, 2016, Commissioner Calabrese served and filed a Notice of Discipline against Plaintiff alleging misconduct based upon the allegedly unauthorized absence of July 28, 2016 and allegedly insubordinate statements made by Plaintiff during the August 10, 2016 meeting described above.

67. On September 6, 2016, Plaintiff filed a Complaint of discrimination in the terms and conditions of employment on the basis of disability with the New York State Division of Human Rights.

68. Hearings on the September 6, 2017 Notice of Discipline began on October 10, 2016 and continued over nine sessions, the last of which was held on January 10, 2017.

69. In response to the August 10, 2016 request for an accommodation by providing more frequent bathroom breaks, on October 25, 2016, the Village's counsel advised that inasmuch as the Village is of " significantly limited size," Detective Novick could take as many bathroom breaks as he wanted" while working patrol.

70. Plaintiff and/or his representatives informed the Village that the foregoing was insufficient accommodation inasmuch as if he were on the road or involved in an in investigation, he might nevertheless be unable to get to a bathroom in sufficient time to meet his needs and that the accommodation requested was to work inside at headquarters

71. The requested accommodation was repeatedly denied.

72. On May 19, 2017, the Hearing Officer designated to hear evidence on the September 6, 2016 disciplinary charges found Plaintiff responsible on each of the three charges preferred and as urged by the Village attorney, recommended the penalty of demotion.

73. Plaintiff has been instructed to report to Police headquarters to receive a new identification card and badge reflecting this demotion.

74. Other officers, including a Lieutenant of the Wappingers Falls Police Department, have been absent from work at the Wappingers Falls Police Department without authorization (AWOL).

75. Those other officers were not Union officers and did not engage in advocacy on behalf of Union members.

76. Those other officers did not have a disability as defined by federal or state law.

77. No such other officer was ever served with a Notice of Discipline, brought up on charges or demoted as a result of being absent without authorized leave.

78. To date, as a result of the Village's failure to accommodate Plaintiff's request, to work in headquarters as he had previously done when he was a detective, he has been unable to return to work.

## AS AND FOR A FIRST CLAIM: RETALIATION FOR UNION ACTIVITIES AND ADVOCACY IN VIOLATION OF THE FIRST AMENDMENT

79. Plaintiff repeats and realleges Paragraphs 1 through 78 of this Complaint, as though set forth at length herein.

80. The foregoing adverse employment actions undertaken by the Village against Plaintiff in bringing disciplinary charges against him, demoting him and refusing him a reasonable workplace accommodation requested on account of his disability were substantially motivated by a desire to retaliate against Plaintiff for his Union activities and advocacy.

81. By reason of the foregoing, Defendant has violated Plaintiff's First Amendment right to association with a Union and to advocate on behalf of its members.

82. By reason of the foregoing, Plaintiff has sustained damages in the form of lost back pay, front pay, decreased retirement and other benefits, damage to reputation, pain, suffering and mental anguish.

83. By reason of the foregoing Plaintiff has sustained damages in an amount to be determined at trial but in no event less than $2,500,000.00

## AS AND FOR A SECOND CLAIM: DISCRIMINATION IN TERMS AND CONDITIONS OF EMPLOYMENT ON THE BASIS OF DISABILITY IN VIOLATION OF THE ADAAA

84. Plaintiff repeats and realleges Paragraphs 1 through 83 of this Complaint as though set forth at length herein.

85. Plaintiff is a person with a Disability as defined by the Americans with Disabilities Amendments Act of 2009 in that bladder cancer is a physical impairment that substantially impairs a major life activity- operation of a major bodily function, i.e. the bladder.

86. At all times relevant hereto, Defendant Village was aware of Plaintiff's disability.

12

87. Defendant regarded Plaintiff as a person with a disability as set forth above.

88. Plaintiff has a record of such impairment.

89. Plaintiff is and was able to perform the essential functions of his previously assigned position of Police Detective and his current assignment to patrol, with or without an accommodation.

90. By assigning Plaintiff to patrol as of June 1, 2016, a position in which Plaintiff could no longer make his own schedule whereby he could, generally work "inside" and by forcing him to be on the road and not near a bathroom facility, Defendant deliberately made it impossible for him to continue to work in that position.

91. By reason of the foregoing, Defendant discriminated against Plaintiff in the terms and conditions of employment by reason of his disability, in violation of the Americans With Disabilities Amendments Act of 2008, 42 U.S.C. 12101 et seq.

92. By reason of the foregoing, Plaintiff has sustained damages in the form of lost back pay, front pay, decreased retirement and other benefits, damage to reputation, pain, suffering and mental anguish.

93. By reason of the foregoing, reason of the foregoing Plaintiff has sustained damages in an amount to be determined at trial but in no event less than $2,500,000.00

### AS AND FOR A THIRD CLAIM: DISCRIMINATION IN TERMS AND CONDITIONS OF EMPLOYMENT ON THE BASIS OF DISABILITY IN VIOLATION OF THE ADAAA

94. Plaintiff repeats and realleges Paragraphs 1 through 93 of this Complaint as though as though set forth at length herein.

95. Defendant commenced disciplinary charges against Plaintiff and demoted him as a result of an absence of which they were aware in advance per departmental policy and procedure

and which they were aware was due to his ongoing treatment for bladder cancer, the disability described above.

96. Defendant was aware that other officers who had been absent without leave (AWOL) and who did not suffer a disability were not subjected to such disciplinary charges or demotion.

97. By reason of the foregoing, Defendant discriminated against Plaintiff in the terms and conditions of employment by reason of his disability, in violation of the Americans With Disabilities Amendments Act of 2008, 42 U.S.C. 12101 et seq.

98. By reason of the foregoing, Plaintiff has sustained damages in the form of lost back pay, front pay, decreased retirement and other benefits, damage to reputation, pain, suffering and mental anguish.

99. By reason of the foregoing, reason of the foregoing Plaintiff has sustained damages in an amount to be determined at trial but in no event less than $2,500,000.00

**AS AND FOR A FOURTH CLAIM: DISCRIMINATION IN TERMS AND CONDITIONS OF EMPLOYMENT ON THE BASIS OF DISABILITY IN VIOLATION OF THE ADAAA: FAILURE TO ACCOMMODATE**

100. Plaintiff repeats and realleges Paragraphs 1 through 99 of this Complaint as though as though set forth at length herein.

101. With reasonable accommodation, i.e. permitting Plaintiff to work inside as he had previously done, Plaintiff could have performed the essential functions of his job either as a detective or a patrolman.

102. The Village refused to make such accommodation.

103. By reason of the foregoing Defendant discriminated against Plaintiff in the terms and conditions of employment on the basis of disability in violation of the ADAAA, 42 U.S.C. 12101 et seq.

104. By reason of the foregoing, reason of the foregoing Plaintiff has sustained damages in an amount to be determined at trial but in no event less than $2,500,000.00

**AS AND FOR A FIFTH CLAIM: DISCRIMINATION IN TERMS AND CONDITIONS OF EMPLOYMENT ON THE BASIS OF DISABILITY IN VIOLATION SECTION 296 et seq. OF THE NEW YORK STATE EXECUTIVE LAW (NYHRL)**

105. Plaintiff repeats and realleges Paragraphs 1 through 104 of this Complaint as though as though set forth at length herein.

106. Plaintiff is a person with a "disability" as defined in Section 292 of the New York Human Rights law is that he has a physical or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function and is demonstrable by medically accepted clinical or laboratory diagnostic techniques, i.e., bladder cancer.

107. Plaintiff has a record of such an impairment;

108. Plaintiff has a condition or (c) a condition regarded by others as such an impairment.

109. Upon the provision of reasonable accommodations, as set forth above, the foregoing disability would not prevent the Plaintiff from performing in a reasonable manner the activities involved in the position of Detective or on patrol.

110. By reason of the foregoing Defendant discriminated against Plaintiff in the terms and conditions of employment on the basis of disability in violation of the Sections 296 et seq. of the New York State Human Rights Law.

111. By reason of the foregoing, reason of the foregoing Plaintiff has sustained damages in an amount to be determined at trial but in no event less than $2,500,000.00

WHEREFORE, Plaintiff seeks judgment against Defendant on the FIRST, SECOND, THIRD and FOURTH CLAIMS in an amount to be determined at trial, but in no event less than

104. By reason of the foregoing, reason of the foregoing Plaintiff has sustained damages in an amount to be determined at trial but in no event less than $2,500,000.00

**AS AND FOR A FIFTH CLAIM: DISCRIMINATION IN TERMS AND CONDITIONS OF EMPLOYMENT ON THE BASIS OF DISABILITY IN VIOLATION SECTION 296 et seq. OF THE NEW YORK STATE EXECUTIVE LAW (NYHRL)**

105. Plaintiff repeats and realleges Paragraphs 1 through 104 of this Complaint as though as though set forth at length herein.

106. Plaintiff is a person with a "disability" as defined in Section 292 of the New York Human Rights law is that he has a physical or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function and is demonstrable by medically accepted clinical or laboratory diagnostic techniques, i.e., bladder cancer.

107. Plaintiff has a record of such an impairment;

108. Plaintiff has a condition or (c) a condition regarded by others as such an impairment.

109. Upon the provision of reasonable accommodations, as set forth above, the foregoing disability would not prevent the Plaintiff from performing in a reasonable manner the activities involved in the position of Detective or on patrol.

110. By reason of the foregoing Defendant discriminated against Plaintiff in the terms and conditions of employment on the basis of disability in violation of the Sections 296 et seq. of the New York State Human Rights Law.

111. By reason of the foregoing, reason of the foregoing Plaintiff has sustained damages in an amount to be determined at trial but in no event less than $2,500,000.00

WHEREFORE, Plaintiff seeks judgment against Defendant on the FIRST, SECOND, THIRD and FOURTH CLAIMS in an amount to be determined at trial, but in no event less than

TWO MILLION FIVE HUNDRED THOUSAND DOLLARS ($2,500,000.00), together reasonable attorneys' fees and the costs and disbursements of this action and on the FIFTH CLAIM, in an amount to be determined at trial, but in no event less than TWO MILLION FIVE HUNDRED THOUSAND DOLLARS ($2,500,000.00), together with the costs and disbursements of this action, in addition to such other further and different relief as to the Court seems just and proper.

Dated:   October 16, 2017.
        White Plains, New York

Yours, etc.

GOULD & BERG, LLP

By: *Jane Bilus Gould*

Jane Bilus Gould (JBG4510)
Attorneys for Plaintiff Martin B. Novick, Jr.
222 Bloomingdale Road
White Plains, New York 10605
(914) 397-1050